## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEIJER, INC., et al. | : | CIVIL ACTION |
| v. | : | NO. 08-2431 |
| BIOVAIL CORPORATION, et al. | : | |
| | : | |
| PLUMBERS & PIPEFITTERS LOCAL 572 HEALTH & WELFARE FUND | : | CIVIL ACTION |
| v. | : | NO. 08-2433 |
| BIOVAIL CORPORATION, et al. | : | |
| ROCHESTER DRUG CO-OPERATIVE, INC. | : | CIVIL ACTION |
| v. | : | NO. 08-2462 |
| BIOVAIL CORPORATION, et al. | : | |
| AMERICAN SALES COMPANY, INC. | : | CIVIL ACTION |
| v. | : | NO. 08-2464 |
| BIOVAIL CORPORATION, et al. | : | |
| IBEW-NECA LOCAL 505 HEALTH & WELFARE PLAN | : | CIVIL ACTION |
| v. | : | NO. 08-2686 |
| BIOVAIL CORPORATION, et al. | : | |
| PAINTERS DISTRICT COUNCIL NO. 30 HEALTH & WELFARE FUND | : | CIVIL ACTION |
| v. | : | NO. 08-2688 |
| BIOVAIL CORPORATION, et al. | : | |

FILED

JUL 3 1 2008

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

File

| | | |
|---|---|---|
| **MECHANICAL CONTRACTORS-UNITED ASSOCIATION LOCAL 119 HEALTH & WELFARE PLAN** | : | **CIVIL ACTION** |
| | : | **NO. 08-2712** |
| v. | : | |
| **BIOVAIL CORPORATION, <u>et al.</u>** | : | |
| **BRICKLAYERS AND MASONS LOCAL UNION NO. 5 OHIO HEALTH & WELFARE FUND** | : | **CIVIL ACTION** |
| | : | **NO. 08-3404** |
| v. | : | |
| **BIOVAIL CORPORATION, <u>et al.</u>** | : | |

## <u>MEMORANDUM AND ORDER</u>

**Kauffman, J.**

July 30, 2008

Now before the Court are the Motions for Reassignment filed by Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") and joined by Defendants Biovail Corporation, Biovail Laboratories, Inc., and Biovail Laboratories International SRL (collectively, "Biovail"). For the reasons discussed below, the Motions will be granted.

## I. BACKGROUND

These putative class actions arise from allegedly anticompetitive conduct by Biovail and GSK (collectively, "Defendants") designed to delay the introduction of generic versions of once-daily bupropion hydrochloride extended release, a prescription antidepressant medication marketed under the name Wellbutrin XL. These actions involve two distinct groups of plaintiffs, the "direct purchasers" and the "end-payors."[1] The direct purchasers and end-payor plaintiffs

---

[1] The putative direct purchaser class includes all entities or persons in the United States and its territories who purchased and/or will purchase Wellbutrin XL and its generic

(collectively, "Plaintiffs") allege that Biovail, the owner of the two patents purporting to cover Wellbutrin XL, entered into an agreement with GSK to develop, approve, manufacture, promote, and distribute Wellbutrin XL. Because of this agreement, Biovail and GSK both had a financial interest in sales of the drug.

Plaintiffs allege that when four generic pharmaceutical manufacturers attempted to enter the bupropion extended release market, Biovail and GSK filed baseless patent infringement lawsuits in order to delay entry of these potential generic competitors.[2] Plaintiffs allege that although Biovail did not prevail in these suits,[3] they had the effect of delaying entry of generic competition, resulting in artificially high prices for the drug. Plaintiffs also allege that Biovail filed a baseless "citizen petition"[4] with the Food and Drug Administration designed to delay

---

equivalents directly from any of the Defendants during the period from November 14, 2005 to a date when the alleged effects of Defendants' anticompetitive conduct cease. The direct purchaser actions before the Court are: Civil Action No. 08-2431, Civil Action No. 08-2462, and Civil Action No. 08-2464.

The putative end-payor class includes all persons or entities (excluding direct purchasers) in the United States and its territories who paid or reimbursed for and/or will pay or reimburse for Wellbutrin XL and its generic equivalents from November 14, 2005 to a date yet to be determined. The end-payor actions before the Court are: Civil Action No. 08-2433, Civil Action No. 08-2686, Civil Action No. 08-2688, Civil Action No. 08-2712, and Civil Action No. 08-3404.

[2]    Plaintiffs allege that both GSK and Biovail filed two of the four infringement actions. GSK later withdrew from these actions, but Plaintiffs allege that it remained a real party in interest to both actions. GSK was a party to the third infringement action as a counterclaim defendant and was not a party to the fourth infringement action.

[3]    Three of the four cases settled prior to a final merits determination. In the fourth action, summary judgment was granted in favor of the generic manufacturer because the proposed generic formulation did not infringe on the XL patents.

[4]    A "citizen petition" allows an individual to express his or her concerns about safety, scientific, or legal issues regarding a product before or after that product enters the market. Until recently, and at all times relevant to these actions, the practice of the FDA was to withhold approval of a drug until after it considered and responded to a citizen petition. Plaintiffs allege that because of the FDA's former practice, the citizen petition process could be "abused" to delay entry of generic competitors.

entry of generic competitors.  Plaintiffs further allege that once a generic manufacturer received final approval for a generic version of the drug, Biovail entered into anticompetitive settlement agreements that barred the generic competitors from releasing a generic version of the 150 mg dosage until 2008.

Plaintiffs contend that but for this alleged anticompetitive conduct, the first generic competitor would have entered the market no later than November 14, 2005.  As a result of the delayed entry of cheaper generic alternatives, Plaintiffs were forced to pay supracompetitive prices for once-daily bupropion hydrochloride extended release.  Plaintiffs filed these actions beginning in May 2008 and designated them as "related" to pending cases involving Wellbutrin SR currently before this Court.  The SR actions involve allegations that GSK made fraudulent assertions to the United States Patent and Trademark Office and engaged in sham patent infringement litigation against potential competitors to delay market entry of generic versions of Wellbutrin SR.[5]  On June 12, 2008, GSK filed the instant Motions; Biovail joined on June 16, 2008.[6]

## II. DISCUSSION

Pursuant to Local Rule 40.1, "[c]ivil cases are deemed related when a case filed relates to property included in another suit, or involves the same issue of fact or grows out of the same

---

[5]     Wellbutrin SR and Wellbutrin XL are different drugs involving different patents. GSK, the holder of the relevant Wellbutrin SR patents, filed five patent infringement suits against generic competitors with the alleged purpose of delaying generic competition.  Biovail is not a party to the Wellbutrin SR litigation, and the allegations of a baseless citizen petition and anticompetitive settlement agreements are absent from the SR litigation.

[6]     The Motions were filed before the filing of the final two end-payor actions, Civil Action No. 08-2712 and No. 08-3404.  Nevertheless, because Defendants have requested that the Motions apply to any actions filed subsequently, the Court will include both actions as part of the instant Motions.

transaction as another suit, or involves the validity or infringement of a patent involved in another suit." E.D. Pa. R. Civ. P. 40.1(b)(3)(A). Defendants argue that the Wellbutrin XL cases are not "related" to the pending Wellbutrin SR cases and that because the actions are not related, the XL cases should be designated for random reassignment. Defendants maintain that because the XL cases involve different patents and a different drug, include defendants and allegations not present in the SR litigation, stem from a different set of allegedly baseless patent infringement actions, and relate to different time periods, the XL actions do not "involve[] the same issue of fact or grow[] out of the same transaction" as the SR actions.[7]

Plaintiffs contend that while the XL actions are not identical to the SR actions, both involve allegations that GSK abused judicial processes in order to delay generic competition, resulting in higher prices for the drugs. They explain that both Wellbutrin XL and Wellbutrin SR stem from the same active ingredient and that the putative classes in the XL actions are essentially the same as the certified direct purchaser class and the putative end-payor class in the SR action. Because Plaintiffs believe that GSK engaged in an overarching scheme to limit generic competition for XL and SR, they maintain that the cases logically relate to one another.[8] They contend also that because many of the same legal standards apply to both actions, judicial economy warrants a denial of reassignment because this Court has resolved numerous discovery

---

[7]   In the SR actions, the allegedly baseless infringement suits were filed from 1999 to 2002. In the XL actions, the allegedly baseless infringement suits were filed from 2004 to 2005. The allegedly baseless citizen petition was filed on December 20, 2005, and the allegedly anticompetitive settlement agreements were announced in 2007.

[8]   Plaintiffs argue that GSK attempted to introduce Wellbutrin XL before generic versions of Wellbutrin SR could reach consumers. By delaying entry of generic versions of SR through baseless patent lawsuits, Plaintiffs allege that GSK intended to "buy time" so that more users of the drug could switch to XL, thereby reducing the overall market for SR that eventually would face generic competition.

-5-

and legal issues in the course of the SR litigation.[9]

Local Rule 40.1 "is intended to foster judicial economy by allowing one judge to consider all actions arising out of the same transaction, while avoiding any possible confusion and prejudice that might befall parties if they were directed to the same judge but were pursuing dissimilar actions." Sellers v. Timoney, 2002 U.S. Dist. LEXIS 25712, at *9 (E.D. Pa. Feb. 6, 2002). As one court in this district has explained, "Rule 40.1 should be construed narrowly, as preservation of the random assignment system is of great value in assuring transparency in the assignment of judges to all parties." Ignatyev v. Chertoff, 2008 U.S. Dist. LEXIS 31573, at *8 (E.D. Pa. Apr. 16, 2008).

In Sellers, the district court was faced with four allegedly "related" cases arising from the Republican National Convention held in Philadelphia in August 2000. 2002 U.S. Dist. LEXIS 25712, at *1. Three of the actions involved plaintiffs who planned to protest the Convention, but were arrested at a warehouse while constructing puppets and floats on July 31 and August 1, 2000 . The fourth action involved a plaintiff who also planned to protest the Convention but did not participate in the construction activities at the warehouse on July 31 and August 1. Id. at *3-8. This plaintiff was arrested on August 2 while walking near Philadelphia City Hall. Id. at *5-6. The district court found that the three actions stemming from the warehouse arrests, while "hardly identical," were related because "the central events underlying the claims made in [the three cases] are those which occurred as the alleged consequences of police surveillance and infiltration of the preparations at the warehouse at 4100 Haverford Avenue on July 31 and

---

[9]     For example, the Court has certified a direct purchaser class in the SR actions and is scheduled to hear oral argument on the pending SR end-payor class motion. Plaintiffs argue that class certification in the XL actions will involve many of the same legal issues and that to avoid inconsistent results and duplicative litigation, the Court should decline reassignment of the XL cases.

August 1." Id. at *9-10.  As to the fourth case, the district court noted that although the plaintiff's complaint "may set forth legal theories similar to those advanced in [the first-filed action]," the action was not related because that plaintiff's "arrest and detention took place at a different time and place and under different circumstances than the arrest and detention of the plaintiffs in [the three related actions]." Id. at *10.

As in Sellers, the alleged conduct at issue in the XL actions occurred in a time period distinct from the conduct at issue in the SR actions.  While Plaintiffs contend that the conduct was part of GSK's larger scheme to monopolize the market for bupropion hydrochloride, the question before the Court is not whether the cases have a logical relationship at some generalized level.[10]  The question is whether they involve the "same issue of fact" or arise out of the "same transaction."  Given the marked dissimilarities between the cases—the different patents at issue, the different time period of the events relevant to each litigation, the allegation that GSK conspired with Biovail to restrain generic competition,[11] and the claims that Biovail filed baseless

---

[10]     Indeed, the fourth action in Sellers had a logical relationship to the other actions, given the similar setting (political protests surrounding the Republican National Convention), legal theories (violations of each plaintiff's constitutional rights), and actors (police officers and elected officials) involved.  Nevertheless, the Sellers court focused on the specific factual circumstances of the fourth case (i.e., the time, location, and circumstances of the arrest at issue) when finding the case unrelated.  See 2002 U.S. Dist. LEXIS 25712, at *10; see also Westchester Fire Ins. Co. v. Treesdale, Inc., 2006 U.S. Dist. LEXIS 23033, at *4-7 (W.D. Pa. Apr. 19, 2006) (rejecting the argument that because two cases stemmed from the same asbestos-related insurance claims against the same companies, they were related under a local rule equivalent to Local Rule 40.1, and explaining that "[u]sing plaintiffs' argument the Sellers court should have found all of the cases to be related since they all stemmed from planned protests during the RNC.  However, the Sellers court did not extend the definition of 'related' that far and neither will we.").

[11]     The XL Plaintiffs also allege that various unnamed coconspirators acted to further the conspiracy to delay generic entry.  In contrast, the SR actions do not involve an alleged conspiracy between GSK and Biovail or any other parties.

infringement suits[12] and a baseless citizen petition before entering into anticompetitive settlement agreements—the Court cannot conclude that they arise out of the same transaction.

While GSK is a defendant in both the XL and SR cases, and while both actions may involve similar issues concerning antitrust law, the pharmaceutical industry, and class certification, the similarities between the actions are insufficient to make them "related" under Local Rule 40.1. See Ignatyev, 2008 U.S. Dist. LEXIS 31573, at *6-7 ("Similarity of legal theories and defendants . . . do not suffice to make cases related under Local Rule 40.1. The rule specifically requires the same issue of fact or the same transaction."); Koresko v. Nationwide Life Ins. Co., 403 F. Supp. 2d 394, 398 (E.D. Pa. 2005) ("[I]n this case, although the plaintiffs are the same in both cases, and both actions involve the alleged misappropriation of the same confidential information, the defendants are different, the claims are different, and the circumstances under which the alleged misappropriation of confidential information took place are different. Consequently, the facts in both cases do not grow out of the same transaction."); Roberts v. Fleet Bank, 2001 U.S. Dist. LEXIS 1879, at *2 (E.D. Pa. Jan. 11, 2001) ("This case does not fall within [Local Rule 40.1]. Although the defendants are the same, and the same statute is alleged to have been violated, the plaintiffs are different, the plaintiff class is defined differently, and a different aspect of the defendants' alleged banking practices is challenged."); Glackin v. White, 1991 U.S. Dist. LEXIS 122, at *3-4 (E.D. Pa. Jan. 2, 1991) (finding, under a prior version of Local Rule 40.1, that a case was unrelated to a previous case, despite the plaintiff's status as a potential class member in the previous case and the similar legal claims at

---

[12]     Although GSK was an initial party to, and later withdrew from, two of the infringement suits, the degree of GSK's actual involvement in the infringement litigation and Biovail's alleged conduct is an issue exclusive to the XL actions.

issue, because of the numerous factual differences between the actions).[13]  To be "related," Local Rule 40.1 requires the XL actions to involve the "same issue of fact" or grow "out of the same transaction" as the SR actions, and because the XL actions do not meet this stringent requirement, they are not related to the SR actions under the terms of the rule.[14]

## III. CONCLUSION

Because these actions are not "related" to the SR actions, the Motions will be granted. An appropriate Order follows.

---

[13]     Plaintiffs cite the district court's decision in <u>Philadelphia Newspapers, Inc. v. Newspaper & Magazine Employees Union</u>, 647 F. Supp. 236, 244 (E.D. Pa. 1986), where the court, in deciding whether to issue a preliminary injunction, noted that the case before it was designated correctly as "related" to another action because "both cases involve: (1) the same union; (2) the same plant; (3) the same group of employees, mailers; and (4) essentially the same underlying dispute, that is, changes in production in connection with changes in automated equipment, the notice of changes required, and the effect of these changes on Union jobs." While the XL actions involve one common defendant and similar allegations of baseless infringement litigation, the underlying disputes are not "essentially the same," given the differing allegations of conspiracy, a baseless citizen petition, and anticompetitive settlement agreements.

[14]     Discovery in the SR litigation is near completion, reducing the likelihood that the SR and XL discovery could be coordinated to promote judicial economy.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MEIJER, INC., et al.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 08-2431** |
| | : | |
| **BIOVAIL CORPORATION, et al.** | : | |
| | : | |
| **PLUMBERS & PIPEFITTERS LOCAL 572 HEALTH & WELFARE FUND** | : | **CIVIL ACTION** |
| | : | |
| | : | **NO. 08-2433** |
| v. | : | |
| | : | |
| **BIOVAIL CORPORATION, et al.** | : | |
| **ROCHESTER DRUG CO-OPERATIVE, INC.** | : | **CIVIL ACTION** |
| | : | |
| | : | **NO. 08-2462** |
| v. | : | |
| | : | |
| **BIOVAIL CORPORATION, et al.** | : | |
| **AMERICAN SALES COMPANY, INC.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 08-2464** |
| | : | |
| **BIOVAIL CORPORATION, et al.** | : | |
| | : | |
| **IBEW-NECA LOCAL 505 HEALTH & WELFARE PLAN** | : | **CIVIL ACTION** |
| | : | |
| | : | **NO. 08-2686** |
| v. | : | |
| | : | |
| **BIOVAIL CORPORATION, et al.** | : | |
| **PAINTERS DISTRICT COUNCIL NO. 30 HEALTH & WELFARE FUND** | : | **CIVIL ACTION** |
| | : | |
| | : | **NO. 08-2688** |
| v. | : | |
| | : | |
| **BIOVAIL CORPORATION, et al.** | : | |

| | | |
|---|---|---|
| **MECHANICAL CONTRACTORS-UNITED ASSOCIATION LOCAL 119 HEALTH & WELFARE PLAN** | : | **CIVIL ACTION** |
| | : | **NO. 08-2712** |
| | : | |
| v. | : | |
| | : | |
| **BIOVAIL CORPORATION, et al.** | : | |
| **BRICKLAYERS AND MASONS LOCAL UNION NO. 5 OHIO HEALTH & WELFARE FUND** | : | **CIVIL ACTION** |
| | : | **NO. 08-3404** |
| | : | |
| v. | : | |
| | : | |
| **BIOVAIL CORPORATION, et al.** | : | |

## ORDER

AND NOW, this 3₁ᵗʰ day of July, 2008, upon consideration of Defendants' Motions for Reassignment (docket no. 3 for civil action no. 08-2431; docket no. 6 for civil action no. 08-2433; docket no. 3 for civil action no. 08-2462; docket no. 6 for civil action no. 08-2464; docket no. 2 for civil action no. 08-2686; docket no. 3 for civil action no. 08-2688), Plaintiffs' Responses in opposition, and Defendants' replies, it is **ORDERED** that the Motions are **GRANTED**.  Accordingly, civil action nos. 08-2431, 08-2433, 08-2462, 08-2464, 08-2686, 08-2688, 08-2712, and 08-3404 are **REFERRED** to the Clerk of the Court for random reassignment.

BY THE COURT:

BRUCE W. KAUFFMAN, J.